IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIO DINERO SESSOMS,<br><br>    Plaintiff,<br><br>  vs.<br><br>R.N. HELEN THORNTON; R.N. FRANCES SSEMPEBWA; DR. EDWARD BIRDSONG; DR. KUMAR; DR. POMPAN; DR. JOHN DOWBAK; DR. ELIZABETH B. SCHNEIDER; DR. T.W. WY; DR. BRIGHT; DR. A. ADAMS; G. ELLIS; RANDY GROUNDS,<br><br>    Defendants | Nos.   C 13-0714 WHA (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO JUDGE VADAS FOR MEDIATION; STAYING CASE**<br><br><br><br>(Docket Nos. 23, 29, 48, 60, 67) |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights case under 42 U.S.C. 1983. He claims that defendants, who are nurses and doctors at Salinas Valley State Prison ("SVSP"), mis-diagnosed and delayed medical care for a hematoma in his calf and for his knee injury. After a review of the amended complaint pursuant to 28 U.S.C. 1915A(a), the claims against defendants G. Ellis and Randy Grounds were dismissed for failure to state cognizable grounds for relief. The claims that the remaining defendants violated his Eighth Amendment rights were found, when liberally construed, to be cognizable, and the amended complaint was served upon defendants R.N. Helen Thornton, R.N. Frances Ssempebwa, Dr. Edward Birdsong, Dr. Kumar, Dr. Pompan, Dr. John Dowbak, Dr. Elizabeth B. Schneider, Dr. T.W. Wy, Dr. Bright, and Dr. A. Adams. The claims against Dr. Dowbak were thereafter

1 dismissed pursuant to a stipulation filed by plaintiff and Dr. Dowbak.

2 Dr. Schneider filed her own motion for summary judgment (dkt. 23), which she subsequently amended (dkt. 29). Plaintiff opposed the motion, and Dr. Schneider filed a reply brief. Plaintiff and Dr. Schneider have since filed a stipulation to dismiss the claims against her (dkt. 67). Pursuant to the stipulation, the claims against defendant Dr. Schneider are **DISMISSED** pursuant to Federal Rule of Civil Procedure 41(a)(1), and her motions for summary judgment are **DENIED** as moot.

The remaining defendants (hereinafter "defendants") jointly filed a motion for summary judgment (dkt. 48), which they subsequently amended (dkt. 60). Plaintiff has opposed the motion, and defendants have filed a reply brief. The original motion for summary judgment (dkt. 48) is **DENIED** as moot in light of the amended motion, and, for the reasons discussed below, the amended motion for summary judgment (dkt. 60) is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

The following facts are not in dispute, unless otherwise noted.

On August 22, 2011, Plaintiff requested medical treatment for a "knot" in his right calf (Opp. (dkt. 64) Exh. A at 1). The knot was ultimately discovered to be a hematoma, or blood clot, when it was surgically removed in July 2012. In response to his initial request for care, Nurse Thornton referred him to a "routine" appointment with a doctor (*ibid.*). Defendant Dr. Birdsong examined him approximately one month later, on September 21, 2011 (*id.* at 2). Dr. Birdsong claims that plaintiff only complained about knee and foot pain when he played basketball, but did not mention the "knot" in his calf (*ibid.*). Dr. Birdsong prescribed ibuprofen, referred him to a podiatrist, and recommended a cortisone shot (*ibid.*).

After another month, on October 24, 2011, plaintiff again requested care for a "large lump" in his calf, and defendant Nurse Ssempebwa referred him for immediate attention from Dr. Birdsong (*id.* at 3; Bright Decl. ¶¶ 19-20). Ssempebwa described the lump as the size of a fist (Opp. Exh. A at 3). Dr. Birdsong ordered an x-ray on his knee and referred him to another doctor (Bright Decl. ¶ 20). A week later, the x-ray was performed and plaintiff was seen by Dr.

2

Tuvera (who is not a defendant); plaintiff complained of knee pain and "popping" from playing basketball, and Dr. Tuvera recommended an M.R.I. of the knee, prescribed ibuprofen, and recommended a follow up appointment in one month (Opp. Exh. A at 4). The radiologist who performed the x-ray found no "mass," and recommended an M.R.I. if there is "continued clinical suspicion" of a mass (*id.* at 5).

On November 21, 2011, plaintiff again asked for the lump in his calf to be examined and for an M.R.I., and Nurse Ssempebwa referred him for a "routine" appointment with a doctor for knee pain (*id.* at 6). After three weeks, plaintiff again requested to see a doctor "as soon as possible" for a "mysterious lump" in his calf, and Nurse Ssempebwa scheduled him for a same-day visit with Dr. Birdsong (*id.* at 7). Dr. Birdsong found a "firm mass" in plaintiff's leg, which plaintiff told him had been there for three months, and Dr. Birdsong ordered a "routine" (i.e. not urgent or emergent) M.R.I. (*id.* at 8; Bright Decl. ¶ 29). The same day, the radiologist's report discussed above was received by Dr. Birdsong (*id.* at 5; Bright Decl. ¶ 30). Three days later, defendant Dr. Kumar denied the request for an M.R.I., and instructed Dr. Birdsong to refer plaintiff to an orthopedic surgeon (Opp. Exh. A at 8). Dr. Birdsong saw plaintiff on January 19, 2012, opined that the lump "may be a cyst, I do not know," and referred plaintiff to an orthopedic surgeon (*id.* at 10). In the meantime, on January 4, 2012, plaintiff requested medical attention because he was short of breath (*id.* at 9). On January 24, 2012, the orthopedic surgeon, defendant Dr. Pompan, examined plaintiff and ordered an "urgent" M.R.I., which was performed on his right "lower leg" about two weeks later, on February 9, 2012 (*id.* at 11). The M.R.I. results were sent to a radiologist in Illinois, who reported the next day that it could be a cyst, hematoma or lipoma, and this report was received by Dr. Birdsong on March 13, 2012 (*id.* at 12).

On March 18, 2012, plaintiff again requested medical attention for the lump, and he was examined by Dr. Pompan on March 27, 2012, who recommended a consult with an outside "orthopedic tumor specialist" (*id.* at 13-14). Dr. Kumar approved the consult on April 4, 2012, and plaintiff was seen by an outside specialist, Dr. Dowbak, about two months later, on June 14, 2012, who recommended surgery to remove the lump (*id.* at 16). Dr. Kumar approved the

3

1  surgery on June 28, 2013, which Dr. Dowbak performed on July 27, 2012 (*id.* at 17-19). He
2  removed the lump, and the pathology report indicated that the mass was a hematoma, not in a
3  blood vessel but in the muscle body (*id.* at 22-23; Bright Decl. ¶ 48). According to defendant
4  Dr. Bright, there is no indication that plaintiff had "deep vein thrombosis" (Bright Decl. ¶ 48).

On the day of the surgery, Dr. Mack requested a follow-up consultation with an outside specialist (Opp. Exh. A at 19). On September 10, 2012, the consult occurred with orthopedic specialist Dr. Pucelik, who is not a defendant (*id.* at 24-26). Dr. Pucelik found that plaintiff had recovered from the hematoma, but also found that plaintiff's knee pain and other knee problems "may" be from a torn miniscus, which could also have caused the hematoma (*ibid.*). He recommended an M.R.I. of the knee if it had not already been done, and the next day defendant Dr. Wy requested the M.R.I. but Dr. Bright denied the request (*id.* at 26-27). Plaintiff still has not had an M.R.I. of his right knee. In November 2012, he told a nurse and defendant Dr. Wy that his knee was still "popping," that he was in "excruciating pain" behind the knee cap, and that standing up from sitting caused a lot of pain (Opp. 9-10). An x-ray of the knee was taken, but Dr. Wy did not explain the results to him in follow-up visits (*ibid.*).

Plaintiff claims that defendants violated the Eighth Amendment by being deliberately indifferent to his need for treatment for his hematoma and for his knee pain.

**ANALYSIS**

A.  STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving

1  party has met this burden of production, the nonmoving party must go beyond the pleadings
2  and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine
3  issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue
4  of material fact, the moving party wins. *Ibid*.

5  B.   ANALYSIS

6  Plaintiff claims that defendants were deliberately indifferent to his serious medical needs
7  for treatment of his hematoma and his knee, in violation of the Eighth Amendment. Deliberate
8  indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription
9  against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious
10 medical need exists if the failure to treat a prisoner's condition could result in further significant
11 injury or the unnecessary and wanton infliction of pain. *See ibid.* A prison official is
12 deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and
13 disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S.
14 825, 837 (1994). Neither negligence nor gross negligence will constitute deliberate indifference.
15 *Id*. at 835-36 & n.4 (1994). "A difference of opinion between a prisoner-patient and prison
16 medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v.*
17 *Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

18 Plaintiff complains that defendants improperly delayed treatment for the hematoma,
19 including scheduling doctors' appointments, taking x-rays and an M.R.I., scheduling a consult
20 with a specialist, and authorizing surgery. Plaintiff argues that at various points between his
21 discovery of the lump in August 2011 and his surgery to remove it in July 2012 defendants
22 Ssempebwa, Thornton, Birdsong, Pompan, Kumar, Bright, and Adams should have accelerated
23 the treatment he received. The trouble with this argument is that, while there is evidence of
24 delays in taking these steps, there is no evidence that such delays were medically unacceptable or
25 that there was a medical need to remove the hematoma sooner. Plaintiff claims that his blood
26 clot was "deep vein thrombosis," that it can be lethal, and that the delays threatened his life. But
27 there is no medical evidence to support this assertion. To the contrary, the only evidence on this
28 issue is the medical opinion of Dr. Bright that there is no indication that plaintiff had deep vein

5

thrombosis, and the finding by the pathologist that the hematoma was in the "muscle body" not in a blood vessel (Bright Decl. ¶ 48). The lack of urgency is further indicated by the evidence that when the radiologist recommended an M.R.I. of the lump, she did not state that it should be done quickly (*see* Opp. Exh. A at 4-5). There is also no evidence that plaintiff suffered any physical damage from the pace of treatment he received. The medical records indicate that while he was concerned about the lump, it did not cause him pain. In the absence of any evidence that there was a medical need to treat plaintiff's condition more quickly, plaintiff has simply shown a personal disagreement between plaintiff's lay opinion and the opinion of medical doctors as to the proper course of treatment. Such a disagreement, as noted above, is not sufficient to create a genuine factual dispute as to whether the treatment he received for his hematoma was medically inadequate, let alone a violation of his Eighth Amendment rights. Accordingly, defendants are entitled to summary judgment on plaintiff's claim that they violated his Eighth Amendment rights in their treatment of his hematoma.

The remaining issue is the treatment plaintiff received following surgery for his knee. There is evidence that following surgery, plaintiff has experienced pain and popping in his knee when he stands from sitting or otherwise straightens his leg. He complains that Dr. Wy and Dr. Bright never gave him an M.R.I. of the knee, which had been recommended by Dr. Pucelik, the orthopedic specialist who examined plaintiff following surgery. Defendants argue that there is no evidence that plaintiff had a medical need for an M.R.I. of his knee, and that he is simply disagreeing with Dr. Bright's medical opinion that the M.R.I. is not necessary. However, there is evidence that he needed the M.R.I.: in the September 2012 examination, Dr. Pucelik recommended an M.R.I. if one had not already been performed because he suspected a torn miniscus, which may have "contributed" to the hematoma (*id.* at 26). Plaintiff's prior M.R.I. was of his lower leg for the lump, not of his knee (*id.* at 12). In addition, Dr. Wy requested an M.R.I. of the knee (*id.* at 27), and the prior November Dr. Tuvera had recommended an M.R.I. of the knee (*id.* at 4) because of the knee pain and popping. Although Dr. Bright denied the M.R.I., a reasonable juror could find that plaintiff in fact had a medical need for one based on the opinion of the orthopedic specialist Dr. Pucelik alone. A reasonable fact-finder could further

6

1  find that Dr. Bright knew from plaintiff's medical records about Dr. Pucelik's recommendation,
2  and that Dr. Bright deliberately disregarded the need to give him an M.R.I..  Dr. Bright in his
3  declaration offers no explanation why he contravened Dr. Pucelik's recommendation and denied
4  the M.R.I..  There is a genuine factual dispute as to whether Dr. Bright deliberately disregarded
5  plaintiff's medical need for an M.R.I. for his knee, and this issue is material to plaintiff's Eighth
6  Amendment claim.  Accordingly, Dr. Bright's motion for summary judgment will be denied on
7  this issue.

8  No triable factual dispute exists as to whether Dr. Wy was deliberately indifferent to
9  plaintiff's knee condition because Dr. Wy did in fact request the M.R.I..  Plaintiff faults Dr. Wy
10 for failing to appeal Dr. Bright's denial of the M.R.I., but there is no evidence that such an
11 appeal would have succeeded, let alone that Dr. Wy knew it would have succeeded and
12 deliberately chose not to pursue it.  To the contrary, according to plaintiff, Dr. Wy told him that
13 be believed that his "hands were tied" after Dr. Bright denied the M.R.I..  In addition, defendants
14 have presented evidence that the decision whether to provide the M.R.I.  did not rest with the
15 treating physician (Dr. Wy in this instance), but with supervisory doctors (Dr. Bright in this
16 instance). Accordingly, there is no genuine issue of material fact as to whether Dr. Wy was
17 deliberately indifferent to plaintiff's medical needs.

18 C.   REFERRAL TO PRO SE PRISONER MEDIATION PROGRAM

19 The court has established a Pro Se Prisoner Mediation Program.  Certain prisoner civil
20 rights cases may be referred to a neutral magistrate judge for prisoner mediation proceedings.
21 The proceedings consist of one or more conferences as determined by the mediator.  As
22 summary judgment is being denied in part, this case is appropriate for mediation and will be
23 referred to the Pro Se Prisoner Mediation Program.

**CONCLUSION**

25 Pursuant to the stipulation (dkt. 67), the claims against defendant Dr. Schneider are
26 **DISMISSED** pursuant to Federal Rule of Civil Procedure 41(a)(1), and her motions for summary
27 judgment (dkt. 23, 29) are **DENIED** as moot.

28 The remaining defendants' original motion for summary judgment (dkt. 48) is **DENIED** as

7

moot in light of their amended motion for summary judgment (dkt. 60), which is **GRANTED IN PART AND DENIED IN PART**: the motion is **DENIED** to defendant Bright on plaintiff's Eighth Amendment claim pertaining to the treatment of his knee, and the motion is **GRANTED** in favor of defendants Bright, Thornton, Ssempebwa, Birdsong, Kumar, Wy, Pompan and Adams on all all other claims.

This case is **REFERRED** to Magistrate Judge Vadas pursuant to the Pro Se Prisoner Mediation Program. All further proceedings in this case except those related to the mediation and compliance with the subpoena as ordered above are **STAYED** pending completion of that procedure.

The mediation proceedings shall take place within 120 days of the date this order is entered. Magistrate Judge Vadas shall coordinate a time and date for a mediation proceeding with all interested parties or their representatives and, within five days after the conclusion of the mediation proceedings, file a report. All mediation proceedings shall be confidential and no statement made therein will be admissible in any proceedings in the case, unless the parties otherwise agree. No part of the mediation proceeding shall be reported, or otherwise recorded, without the consent of the parties, except for any memorialization of a settlement.

The clerk shall send a copy of this order to Magistrate Judge Nandor Vadas.

IT IS SO ORDERED.

Dated: September    10   , 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE