IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIO DINERO SESSOMS,<br><br>    Plaintiff,<br>v.<br>DARRIN BRIGHT, M.D.,<br><br>    Defendant. | No. C 13-00714 WHA<br><br>**ORDER RE MOTION FOR SUMMARY JUDGMENT** |

### INTRODUCTION

Plaintiff, a California prisoner proceeding *pro se*, filed this civil rights case under 42 U.S.C. 1983 alleging deliberate indifference to his medical needs. He has since retained pro bono counsel. Now, the remaining defendant moves for summary judgment. For the reasons stated below, defendant's motion is **DENIED**.

### STATEMENT

**1. BACKGROUND OF THE CASE.**

The facts of this case have been laid out in a previous order granting in part and denying in part defendants' motions for summary judgment (Dkt. No. 68). That order dismissed all defendants except defendant Dr. Darrin Bright, who filed the present supplemental motion for summary judgment. In brief, in 2011, plaintiff Tio Sessions requested medical treatment for a "knot" in his right calf. He also complained that he had suffered knee problems for several years. After several visits, an MRI, and a referral to a tumor specialist, doctors ultimately

discovered the knot to be a hematoma. Plaintiff underwent surgery to remove the knot in July 2012. Doctors ordered several rounds of follow-up visits after surgery (Plaintiff Exh. A at AG 1, 21, 61, 155, 168).

In September 2012, plaintiff sat for a follow-up appointment with Dr. James Pucelik, an orthopedic surgeon at San Joaquin General Hospital. Dr. Pucelik noted that plaintiff had recovered from the calf surgery, but also observed that plaintiff suffered ongoing right knee problems and suggested that plaintiff "may have a torn meniscus." Dr. Pucelik recommended that plaintiff receive a follow-up MRI on his right knee (Plaintiff Exh. A at AG 266, 342).

The next day, plaintiff sat for a further follow-up appointment with Dr. T.W. Wy, plaintiff's primary care physician, who noted plaintiff's "chronic right knee pain." Dr. Wy then submitted a formal request for plaintiff to receive an MRI on his right knee, agreeing with Dr. Pucelik's assessment, and observing that plaintiff suffered from years of "knee pain and popping" (Plaintiff Exh. A at AG 75, 265).

One week later, defendant Bright, who never examined plaintiff and is not an orthopedic specialist, denied the request for an MRI of plaintiff's right knee, claiming that it was not medically necessary based on internal criteria and stating "[t]he ortho note is not clear why they want an MRI of a knee for a calf injury" (Plaintiff Exh. B). Nobody notified plaintiff of the MRI denial.

One month later, Dr. Wy again examined plaintiff, who continued to complain of knee pain and asked about the status of his MRI. Dr. Wy then ordered an x-ray of plaintiff's knee, which occurred. The radiologist found the x-ray to be normal and recommended "further imaging evaluation with MRI." Dr. Wy then recommended physical therapy. Defendant Bright denied this request and the denial did not mention anything about the multiple requests for an MRI or the recent request for physical therapy (Plaintiff Exh. A at AG 172, 265, 272–79).

After another month, in December 2012, Dr. Wy submitted a request for plaintiff to be sent to the orthopedic clinic to be evaluated by a specialist. Once again, defendant Bright denied the request. After this most recent denial, Dr. Wy submitted another request for an MRI, noting plaintiff's knee had been "popping" and "giving way." Dr. Wy again mentioned that Dr.

2

Pucelik, an orthopedic specialist, had previously recommended an MRI. Defendant Bright again denied the request (Plaintiff Exh. A at AG 81–86).

In May 2013, after filing this lawsuit, plaintiff was approved for physical therapy. Dr. Fernando Tuvera examined plaintiff, noted his knee condition to be "abnormal" and sent plaintiff for more physical therapy. The physical therapist recommended an MRI on plaintiff's right knee (Plaintiff Exh. A at AG 86, 182). Since then, plaintiff has continued to complain about his knee and has received intermittent treatment. To this date, plaintiff has not undergone an MRI of his right knee.

### 2. PROCEDURAL HISTORY.

In April 2013, plaintiff filed a *pro se* complaint alleging constitutional violations against several nurses and doctors who had treated him (Dkt. No. 6). After a handful of defendants were dismissed, the remaining defendants moved for summary judgment. An order granted summary judgment as to all defendants except defendant Bright, finding as follows (Dkt No. 68 at 6–7) (internal citations omitted):

> Although Dr. Bright denied the MRI, a reasonable juror could find that plaintiff in fact had a medical need for one based on the opinion of the orthopedic specialist Dr. Pucelik alone. A reasonable fact-finder could further find that Dr. Bright knew from plaintiff's medical records about Dr. Pucelik's recommendation, and that Dr. Bright deliberately disregarded the need to give him an MRI. Dr. Bright in his declaration offers no explanation why he contravened Dr. Pucelik's recommendation and denied the MRI. There is a genuine factual dispute as to whether Dr. Bright deliberately disregarded plaintiff's medical need for an M.R.I. for his knee, and this issue is material to plaintiff's Eighth Amendment claim. Accordingly, Dr. Bright's motion for summary judgment will be denied on this issue.

Plaintiff then retained counsel through the Federal Pro Bono Project and Attorney Thomas Weathers came into the case. Shortly thereafter, Attorney Weathers withdrew, and Attorneys Bonnie Lau, Ivor Samson, and Jessica Duggan from the law firm Dentons US LLP became counsel for plaintiff.

Now, defendant Bright has filed a supplemental motion for summary judgment. This order follows full briefing and oral argument.

**ANALYSIS**

**1.    SUMMARY JUDGMENT MOTION.**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff claims that defendant Bright was deliberately indifferent to his serious medical needs by refusing to approve the requests for an MRI, in violation of the Eighth Amendment. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835--36, n.4.

Here, there is a genuine factual dispute as to whether defendant deliberately disregarded plaintiff's medical needs when he overruled Dr. Pucelik and Dr. Wy's recommendations that plaintiff receive an MRI on his knee. Our court of appeals' decision in *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012), is on point. In *Snow*, an inmate suffered from hip pain and an orthopedic specialist recommended surgery. Instead, the non-specialist supervising doctor merely ordered that the inmate receive pain medicine. After the district court granted defendant's motion for summary judgment, our court of appeals reversed, holding:

> The defendants argue that this was merely a difference of opinion that cannot amount to deliberate indifference. We disagree. Based on the unchallenged medical records and inferences drawn in favor of Snow, a reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under all of the circumstances.

*Id.* at 988.

Our court of appeals held similarly in *Hamilton v. Endell*, 981 F.2d 1062 (9th Cir. 1992) (overruled in part on other grounds). There, a surgeon who had operated on the inmate's ear

4

1    recommended that he not fly on an airplane. Despite these instructions, prison officials
2    solicited a second opinion from a physician who had not treated the inmate. That physician
3    stated that based on his own experience, but not from any examination, that plaintiff could fly
4    immediately. Our court of appeals found that "choosing to rely upon a medical opinion which a
5    reasonable person would likely determine to be inferior" and forcing the inmate to fly "may
6    have amounted to the denial of medical treatment." *Id*. at 1067.

7    So too here. Defendant Bright, a non-treating and non-specialist physician, denied the
8    request for an MRI of plaintiff's knee despite the recommendation from Dr. Pucelik, who is a
9    specialist and treated defendant, and despite the recommendation of Dr. Wy, who treated
10   plaintiff on several occasions. As in *Smith* and *Hamilton*, a reasonable jury could find that this
11   amounted to a deliberate indifference to serious medical needs.

12   Defendant relies on our court of appeals' decision in *Sanchez v. Vild*, 891 F.2d 240 (9th
13   Cir. 1989). In *Sanchez*, the plaintiff stated that one Dr. Abbot had told him he needed surgery,
14   despite all other treating physicians finding surgery to be unnecessary. There were no records
15   that the plaintiff ever saw a Dr. Abbot and the records indicated that the Department of
16   Corrections in that case had not employed anyone by that name. Even accepting the plaintiff's
17   assertion as true, our court of appeals held that "[a] difference of [medical] opinion does not
18   amount to a deliberate indifference to Sanchez' serious medical needs." *Id*. at 242. Twenty-
19   three years after *Sanchez* (which came down in 1989), our court of appeals clarified what
20   degree of medical disagreement could rise to the level of an Eighth Amendment violation in
21   *Smith*, cited above. In our case, as in *Smith*, a non-treating and non-specialist physician went
22   against the recommendation of a specialist, treating physician. In *Sanchez*, no such specialist
23   opinion was disregarded, and *Sanchez* is thus distinguishable on that ground.

24   Defendant also relies on our court of appeals' decision in *Toguchi v. Chung*, 391 F.3d
25   1051 (9th Cir. 2004). There, the estate of an inmate alleged constitutional violations against a
26   doctor who treated the inmate with a particular drug, despite knowing that the inmate had been
27   hospitalized years earlier for a negative reaction to that drug. Our court of appeals affirmed the
28   district court's grant of summary judgment in favor of the defendant. The facts in *Toguchi*,

5

however, were completely different than those in our case. *Toguchi* did not involve competing recommendations from different doctors. Rather, it involved an allegedly unconstitutional decision by a doctor to prescribe a certain drug. While *Toguchi* cites general principles regarding Eighth Amendment claims centered around allegations of deliberate indifference to medical needs, it is factually distinguishable from our case.

Furthermore, defendant argues that there is no dispute of material fact because in his opinion, plaintiff did not meet the criteria for approval of an MRI as set forth under California Code of Regulations Title 15 and under the InterQual imaging criteria used by the California Department of Corrections. Both of these criteria provide that inmates shall only be provided medical services necessary to protect life, prevent significant illness or disability, or to alleviate severe pain. A state regulation, however, cannot override a constitutional duty.

As stated above, two treating physicians, one of whom was an orthopedic specialist, recommended that plaintiff receive an MRI on his knee. Defendant disagreed and denied the MRI requests, despite the fact that he never treated or examined plaintiff. Thus, a jury will need to determine whether defendant's actions constituted a deliberate indifference to plaintiff's serious medical needs.

2. **MOTION FOR LEAVE TO FILE A SUR-REPLY.**

After defendant filed his reply to plaintiff's opposition, plaintiff (through pro bono counsel) filed a motion for leave to file a sur-reply, and appended a proposed sur-reply. Under Civil Local Rule 7–3(d)(1), any objection to a reply must be filed within seven days of that reply's submission. Plaintiff's request to file a sur-reply came in eleven days after defendant's reply, and is thus untimely. Plaintiff's request is **DENIED**.

**CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment is **DENIED**. A case management conference is hereby set for **DECEMBER 10, 2015, AT ELEVEN A.M.** The parties shall submit a joint case management statement by **DECEMBER 3, 2015.**

**IT IS SO ORDERED.**

Dated: November 19, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE